SANDS & CO. *vs.* MATTHEWS, FINLEY & CO.

[ORIGINAL ATTACHMENT AND GARNISHMENT—CONTEST WITH TRANSFERREE.]

1. *Acceptance of bill of exchange must be in writing*—Under the provisions of the Code (§§ 1532, 1535), no right can accrue to any one from a verbal promise to pay or accept a bill of exchange, unless the party to whom such promise is made negotiates the bill on the faith of it.

2. *Retention of bill by permission no acceptance.*—If the drawee, by permission of the payee's agent, retain the bill for examination from Saturday until the following Monday, no legal obligation is thereby created against him as acceptor during that time (Code, § 1536).

3. *Drawee, before acceptance, liable to garnishment.*—A bill of exchange, until accepted, does not operate as an assignment of the funds in the hands of the drawee, which may therefore be attached by process of garnishment. (Expressly overruling Connoley v. Cheesborough, 21 Ala. 166; though the decision, under the facts, might have been rested on its authority.)

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THE appellants, on the 16th May, 1853, sued out an original attachment against the estate of Stone & Walworth, as non-residents, and summoned Alexander Auld by process of garnishment, as their debtor; and afterwards, on the 18th May, 1853, recovered a judgment against said Stone & Walworth, for $1,215 18. The garnishee appeared, at the June term, 1853, and answered as follows: "That he was indebted to said Stone & Walworth, in the sum of $796 02, and no more; that they drew two drafts on him, in favor of St. John, Powers & Co., one for $386 68, at one day's sight, and the other for $420 97, at thirty days' sight, which drafts were presented to him for acceptance on Saturday, May 14, 1853, by St. John, Powers & Co., who represented themselves to be agents of the parties in New Orleans claiming the money; that he took the drafts into his possession, and requested that he might retain them until Monday, the 16th May, and promised St. John, Powers & Co. that he would pay the draft for $386 68 on Monday, and if he found on examination that the amount of the other draft was correct, he would on Monday accept it, payable in thirty days; that the drafts remained in his hands,

in the same situation, when this process of garnishment was served upon him on Monday. Further answering, garnishee says, that on the 10th May, 1853, said Stone & Walworth drew on him, in favor of the same parties, for the sum of $600, which he refused to accept, and that draft was accordingly returned ; that afterwards they drew the drafts above named, which amount to more than his indebtedness to them by $11 63, being so drawn by mistake ; and he attaches hereunto a copy of his letter to said Stone & Walworth at the time said draft for $600 was drawn on him."

By consent of parties, as appears from an agreement of record, Matthews, Finley & Co. were substituted for St. John, Powers & Co., and were permitted to appear as claimants without filing an affidavit ; and it was further agreed, that said drafts were drawn in the ordinary form of negotiable bills of exchange, and did not indicate that they were drawn on any specific fund. In the judgment entry, discharging the garnishee, it is recited " that the said drafts were produced to the court, duly endorsed by said St. John, Powers & Co., by which it is shown that said Matthews, Finley & Co. are the rightful claimants of the fund mentioned in said garnishee's answer"; and the garnishee was accordingly discharged, at plaintiffs' costs, which judgment is now assigned for error.

PERCY WALKER, for appellants, made these points :—

1. The drawee of a bill of exchange cannot be held liable, under the Code, unless he accepts, or promises to accept, in writing.—Code, § 1532 ; 2 Story's Equity, § 1043.

2. The drawing of a bill, before acceptance, does not operate as an assignment to the payee of the funds in the hands of the drawee. The ruling in Connoley v. Cheesborough, 21 Ala. 166, it is submitted, is not correct, and is not sustained by the authorities cited in its support. The question has, of late years, undergone careful and elaborate discussion in the Court of Appeals of New York ; and it is there held, that the drawee, until after the bill is accepted, owes no duty to the holder.—Harris v. Clark, 3 Comstock's R. 118 ; Cowperthwaite v. Sheffield, ib. 243 ; Winter v. Drury, 1 Selden's R. 525 ; Chapman v. White, 2 ib. 412 ; also, Mandeville v. Welch, 5 Wheat. 286.

3. But, even if Connoley v. Cheesborough is adhered to, so far as this general proposition is concerned, it cannot be regarded as an authority under the particular facts of this case. In that case, but one bill was drawn for the entire amount; here, two separate bills, each for a part of the fund only, and the two together exceeding the amount of that fund. The two bills must be regarded separately, and cannot be consolidated into one; and this brings it within the principle, asserted in that case, "that if a bill be for only a part of the funds in the hands of the drawee, then the assignment cannot be considered as complete, until there has been an acceptance or an agreement to pay." In that case, too, the drawee did not deny the drawer's right to draw the bill, and his only reason for not paying was, that the debt had been attached after the draft had been drawn; while here, it is obvious that he would not have accepted, because the amount, on examination, was found not correct.

JOHN T. TAYLOR, *contra:*

Connoley v. Cheesborough, 21 Ala. 166, is the law of this State, and is decisive of this case. It is here shown that the whole sum in the drawee's hands had been drawn for, that the drafts had been passed to an innocent holder, had been duly presented, and had been in the drawee's hands for two days when the garnishment was served; he retaining them, perhaps, for the express purpose of being garnisheed. It is shown, also, that the drawer had previously drawn for the whole amount at once, but the drawee would not pay in that way; and for his accommodation the two drafts were substituted, giving him time on one. The holder cannot, under such circumstances, lose his lien.—Code, §§ 1533, 1535, 1536.

GOLDTHWAITE, J.—By the Code (section 1532) it is provided, that "no person, within the State, must be charged as the acceptor of a bill of exchange, unless his acceptance is in writing, signed by himself or agent." The object of this provision was, to secure unmistakable evidence to charge the acceptor; and no right could, therefore, accrue to any one upon a verbal promise to pay or accept, unless the party to whom it was made had, on the faith of such promise, nego-

26

tiated the bill.—Code, § 1535. But this section has no application to the facts as disclosed by this record. Neither, in the present case, can the retention of the bills by the drawee, for more than twenty-four hours, amount to an acceptance (Code, § 1536), for the reason, that the only legitimate inference to be drawn from the answer of the garnishee is, that he was permitted by the agent of the holder to retain them until the following Monday, and consequently no legal obligation could be created against him as acceptor during that day.

The judgment rendered can, therefore, only be sustained on the ground, that the drawing of the bills, and their presentment to the drawee, was an assignment to the payee of the amount in his hands belonging to the drawer; the aggregate of the sums drawn for exceeding that amount. In Connoley v. Cheesborough, 21 Ala. 166, the sum drawn for was greater than the amount in the hands of the drawee; and it was held, that upon notice to the latter, it operated as an assignment of the whole fund. But the judge who delivered the opinion in that case concedes, that had the draft been for part of the funds only, it could not be an assignment until accepted; and this is unquestionably true, even in cases where the order is not a bill of exchange, and is drawn upon a special fund; and the reason assigned by Judge Story, in Mandeville v. Welch, 5 Wheat. 286, is, that it would be permitting a creditor " to split up a single cause of action into many actions, without the assent of his debtor." Here, the record shows that two drafts were drawn, each being for less than the amount in the hands of the drawee; and that being the case, if we were to rest on Connoley v. Cheesborough, *supra*, neither of the drafts could operate as an assignment of the amount of the fund they were drawn for, nor could both of them have that effect as to the aggregate amount, for, in either case, it would enable the creditor to split up his demand.

But we are not satisfied to rest our decision on this ground. The drafts here are not payable out of the special fund. They are bills of exchange, and we cannot, without varying their legal effect, say that they are drawn upon the particular, rather than the general fund. They can create no liability in favor of the payee against the drawee, until the latter has

accepted them; and, until then, they do not amount to an assignment of the funds in the hands of the drawee. The case in our own court to which we have referred, is wrong, and is not sustained by the authorities which are cited to support it. Mandeville v. Welch, *supra;* Harris v. Clark, 3 Coms. 93; Cowperthwaite v. Sheffield, 3 *ib.* 243; Winter v. Drury, 1 Seld. 525; Chapman v. White, 2 *ib.* 412; Tiernan v. Jackson, 5 Pet. 580.

As the drawee was garnisheed before his liability to the defendant in attachment had been changed, the debt should have been condemned in his hands.

Judgment reversed, and cause remanded.